UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DON LAVAE WILLIAMS,<br><br>Defendant. | Criminal Action No. 11-254-04 (CKK) |

MEMORANDUM OPINION AND ORDER
(September 14, 2011)

This matter comes before the Court upon Defendant Don Lavae Williams' ("Williams") [16] Motion for *De Novo* Review of Detention Order, through which Williams asks this Court to review Magistrate Judge John M. Facciola's Order authorizing Williams' detention pending trial in this criminal action. Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall DENY Williams's Motion.[1] Williams shall remain detained pending trial.

## I. BACKGROUND

*A.  Procedural History*

In the [9] Indictment, Williams is charged with: (1) conspiracy to distribute and possess with intent to distribute a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), which is a violation of 21 U.S.C. § 846, (2) use of a communication facility to

---

[1] In rendering its decision, the Court's attention has focused on the following documents, listed in chronological order of their filing: Def.'s Mot. and Supporting Mem. for De Novo Review Order and Request for Expedited Hearing, ECF No. [16]; Gov't's Mem. in Opp'n to Def.'s Bond Review Mot., ECF No. [18]; Def.'s Reply to Gov't's Opp'n to Def.'s Mot. and Supporting Mem. for De Novo Review and Request for Expedited Hearing, ECF No. [19]; Def.'s Suppl. to Reply to Gov't's Opp'n to Mot. and Supporting Mem. for De Novo Review of Detention Order and Request for Expedited Hearing, ECF No. [20].

facilitate the conspiracy in violation of 18 U.S.C. § 2 and 21 U.S.C. § 843(b), and (3) knowing use, carrying, or possession of two firearms in connection with a drug trafficking offense in violation 18 U.S.C. § 924(c)(1). Williams made his initial appearance before Magistrate Judge Facciola on August 18, 2011. *See* Min. Entry (Aug. 18, 2011). A detention hearing was held on August 24, 2011, at the conclusion of which Magistrate Judge Facciola ordered that Williams be detained without bond pending trial. *See* Min. Entry (Aug. 24, 2011). Magistrate Judge Facciola issued a [14] Detention Memorandum setting forth his written findings of fact and statement of reasons on August 26, 2011.

   B.   *The Government's Proffer*

During the Detention Hearing, the Government proffered that Defendants Eric A. Moses ("Moses"), Marcus Capanna ("Capanna"), Victor Brown, and Williams conspired to ship packages of marijuana, usually in one-pound amounts, from California into the District of Columbia metropolitan area. Capanna was the California-based supplier. Williams was responsible for providing the addresses for delivery. During the investigation, text messages from Williams to Moses providing addresses were intercepted. Moses in turn provided those addresses to Capanna. Shipping labels obtained during the investigation listed addresses supplied by Williams. Many of the addresses were in the building in which Williams resided. On more than one occasion, the packages were addressed to fictitious persons using variations of Williams' name.

There were at least nine shipments of marijuana from California to the metropolitan area in an eight-week period in the spring of 2011. One package containing one pound of marijuana was seized after it was identified by a drug-sniffing dog. Communications involving Williams,

Moses, and Capanna were intercepted during which they discussed the tracking number for the package and speculated as to what had happened to the package. On another occasion, a communication was intercepted during which Williams informed Moses that a shipment had arrived. Shortly thereafter, Moses called Capanna to complain about the quality of the shipment.

The police executed a search warrant on Williams' residence at the time of his arrest. In his bedroom, the police found the following: a cooler containing three individually wrapped plastic bags of marijuana; empty ziplock bags; and a digital pocket scale. In the closet of that same bedroom, the police found two loaded handguns, a Springfield 9-mm semi-automatic handgun and a Ravel Model MP .25-caliber semi-automatic handgun, in an unlocked safe. In other rooms, the police found a heat-sealer; empty heat-seal bags; and two telephones that were intercepted during the investigation. On his person, Williams had $2,892 in various denominations. Williams stated to officers, "I messed up having those guns in the house."

## II. LEGAL STANDARD

The district court reviews *de novo* whether there are conditions of release that "will reasonably assure the appearance of [the defendant] as required and the safety of . . . the community." 18 U.S.C. § 3142(e)(1). Where there is probable cause to believe that an offense has been committed under 18 U.S.C. § 924(c), a rebuttable presumption arises that no conditions or combination of conditions will reasonably assure either the defendant's appearance or the safety of the community.[2] 18 U.S.C. § 3142(e)(3)(B). In asking whether the defendant has

---

[2] The rebuttable presumption arises here because the Indictment alone suffices to provide probable cause to believe that Williams committed an offense under 18 U.S.C. § 924(c). *See United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community."); *United States v. Carter*, __ F. Supp. 2d __, 2011 WL 3563088, at

rebutted this presumption, the district court examines the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III. DISCUSSION

Upon conducting a *de novo* review of the record and after considering the relevant detention factors, the Court determines that Williams should remain detained pending trial. The Court shall address each factor in turn.

---

*2 (D.D.C. Aug. 15, 2011) ("[T]he court may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e).") (internal quotation marks and citation omitted).

### A. The Nature and Seriousness of the Offense Charged

There is and can be no dispute that Williams is charged with a crime involving a controlled substance and a crime involving a firearm. 18 U.S.C. § 3142(g)(1). Williams is charged with conspiring to import significant amounts of marijuana, usually in one-pound shipments, into the metropolitan area. He is also charged with using, carrying, or possessing a firearm in connection with a drug trafficking offense. Because these are serious charges, the Court finds that the first detention factor weighs in favor of Williams' continued detention.

### B. The Weight of the Evidence

The Indictment alone is sufficient to provide probable cause to believe that Williams committed the offenses with which he is charged. *See Smith*, 79 F.3d at 1210; *Carter*, 2011 WL 3563088, at *2. Furthermore, as observed by Magistrate Judge Facciola, "the combination of the wiretaps and the evidence pertaining to [the drugs'] shipment, including the shipments to the very home in which defendant resides[,] makes for a strong government case." Detention Mem. at 5. Intercepted communications implicate Williams in the shipment of the drugs and, in executing a search warrant on Williams' residence, the police uncovered items incidental to drug trafficking and distribution, including individually wrapped plastic bags of marijuana, empty ziplock bags, a digital pocket scale, a heat-sealer, empty heat-seal bags, and two telephones that were intercepted during the investigation. This is strong evidence that Williams was engaged in a conspiracy to distribute and possess with intent to distribute a detectable amount of marijuana and that he used a communication facility to facilitate the conspiracy.

The Government's case in connection with the charge of using, carrying, or possessing firearms in connection with a drug trafficking offense is perhaps less strong, but the evidence

nonetheless tends to show that Williams committed the offense. In executing a search warrant on Williams' residence, the police found two semi-automatic handguns in an unlocked safe in the bedroom of the residence. In the very same room, the police found items incidental to drug distribution and trafficking, including individually wrapped plastic bags of marijuana, empty ziplock bags, and a digital pocket scale.[3] In connection with this Motion, Williams has not disputed that the guns are his; regardless, the evidence indicates that, at the time of his arrest, he stated "I messed up having those guns in the house."

Taking into account the nature of the drug activity conducted, the nature of handguns, their accessibility, their relative proximity to drugs and items incidental to drug distribution and trafficking, and the fact that they were loaded, the Court finds that the Government has pointed to significant evidence tending to suggest that Williams used, carried, or possessed firearms in connection with a drug trafficking offense. *See United States v. Wahl*, 290 F.3d 370, 376 (D.C. Cir. 2002) (identifying the relevant factors). True, the Government could have strengthened its case by proffering evidence suggesting that Williams' possession of the firearm was illegal or describing in greater detail the proximity and accessibility of the firearms in relation to the drugs and items incidental to drug distribution and trafficking in the bedroom (*e.g.*, showing that the closet door was open). But the weight of the evidence nonetheless tends to support the charge. *Cf. id.* at 376-77 (firearm was found in defendant's bedroom in close proximity to drugs and drug-related items); *United States v. Gaston*, 357 F.3d 77, 82-83 (D.C. Cir.) (firearm was found

---

[3] Williams' counsel mistakenly interprets the Government's submissions as stating that the handguns were recovered from another room and not near any drugs or drug paraphernalia. Counsel has misread the Government's submissions, which unambiguously proffer that the police found the handguns in the closet of the same bedroom where drugs and drug-related items were located.

in defendant's bedroom in close proximity to drugs and drug-related items), *cert. denied*, 541 U.S. 1091 (2004); *United States v. Kelly*, 552 F.3d 824, 833 (D.C. Cir. 2009) (illegal firearm found within twenty feet of drugs and drug-related items).

Considering the Government's proffer as a whole, the Court finds that the second detention factor weighs in favor of Williams' continued detention.

C.    *The History and Characteristics of Williams*

On the one hand, there is no dispute that Williams has family and community ties in the metropolitan area, where his mother, sister, and young child all live and where he has long resided, that Williams is gainfully employed, and that there is no indication that he has a special physical or mental condition or a history of drug abuse. On the other hand, there is no dispute that Williams has a prior conviction on a misdemeanor threats charge and has pending charges for possession of marijuana and driving under the influence in Maryland and the District of Columbia, respectively. Considering the record a whole, the Court concludes that the third detention factor neither weighs in favor nor against Williams' continued detention.

D.    *The Nature and Seriousness of the Danger to the Community*

The focus of Williams' Motion is his contention that Magistrate Judge Facciola did not take into account or allocate sufficient weight to the fact that his prior history with the judicial system reveals no Bail Reform Act violations, missed court appearances, or escape charges. In particular, Williams emphasizes that he voluntarily returned to the District of Columbia Jail upon the advice of his counsel after he was released in error. The Court has taken these matters into account in rendering its decision today. However, these matters are relevant primarily insofar as they relate to Williams' risk of flight, which plainly was not a focus of Magistrate Judge

7

Facciola's and is not, in any event, this Court's primary concern. Rather, after considering the totality of the evidence, the Court finds that Williams has failed to rebut the presumption of dangerousness applicable in this case. The scale of the alleged conspiracy tends to indicate that Williams is part of an operation that poses a serious danger to the community, and that he personally used, carried, or possessed loaded semi-automatic handguns in connection with a drug trafficking offense. Furthermore, as Magistrate Judge Facciola noted, Williams "was on pre-trial release in two cases in two different jurisdictions" at the time. Detention Mem. at 6. Considering the record as a whole, the Court concludes that the fourth detention factor weighs in favor of Williams' continued detention.

## IV. CONCLUSION

Upon consideration of the totality of the evidence, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in 18 U.S.C. § 3142(c), the Court finds clear and convincing evidence that Williams' pretrial release constitutes an unreasonable danger to the community and that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community were he to be released pending trial. Williams has failed to rebut the presumption in favor of pretrial detention under 18 U.S.C. § 3142(e)(3)(B). Therefore, and for the reasons stated above, it is, this 14th day of September, 2011, hereby

**ORDERED** that Williams' [16] Motion for *De Novo* Review of Detention Order is DENIED and Williams shall remain detained pursuant to 18 U.S.C. § 3142(e); it is further

**ORDERED** that Williams shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; it is further

**ORDERED** that Williams shall be afforded reasonable opportunity for private consultation with counsel; and it is further

**ORDERED** that upon order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Williams is confined shall deliver him to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED.**

_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge